May it please the Court, Bruce Campbell representing the defendants, Portland Public School District and Connie Bull. We're here today on defendants appeal as well as on Ms. Oman, Ms. Pat Oman's cross appeal and with the court's permission I'd like to spend, devote the first part of the argument to addressing the arguments on appeal and then split the remaining time with the state of Oregon in responding to Ms. Oman's cross appeal. Certainly, you may do so counsel. Thank you. I'd like to start with the procedural history that arose from a series of due process hearings regarding IEPs for Ms. Oman's son. Ms. Oman ultimately filed two federal court actions which were later consolidated. The district court here dismissed most of the claims prior to trial but it allowed Ms. Oman to proceed to trial on two theories. First, that the district, the school district through its attorney Constance Bull retaliated against Ms. Oman by not participating in the trial. And second, that Ms. Bull retaliated against Ms. Oman by restricting access to school district employee witnesses in connection with the same due process hearing. After a bench trial, the district court found that Ms. Oman, found for Ms. Oman and awarded her $1 in nominal damages under the IDEA in section 1983. The ruling was erroneous in several respects. First and foremost, an attorney's position in a contested case hearing should not be, should not give rise to retaliation. In a contested case hearing as in litigation or arbitration, the attorney and the claimant are in an adversarial posture. Everything that the attorney does to represent his or her client may work to the disadvantage of the opposing party. It's simply not workable to have a retaliation concept. It could open the floodgates to litigation by injecting retaliation principles. And there's a good reason I think no court before this district court had ever recognized that an attorney's positions in litigation could give rise to retaliation. Second, even if theoretically an attorney's actions could amount to a retaliation in the context of a contested case hearing, the conduct here was not retaliatory. The decision that Ms. Bull made to not engage in informal discovery is commonplace in administrative proceedings. In fact, in this case, it was invited by the ALJ and was expressly approved by Ms. Oman. And that's found at page 19 of our brief. Likewise, the restriction on access to employee witnesses is something that's commonplace in litigation, arbitration, or contested case hearings. And it's a very common, if not uniform, practice. There's nothing wrong with requiring an opposing party to work through counsel to interview, to talk to witnesses that will appear, that are represented by the counsel. How does that reconcile with the, I think it's a suggestion to pro se litigants that they contact their witnesses before they come to any hearing and talk to them so that they know what the witness might say and whether or not that would give them information as to whether or not they need to call them. I mean, isn't, aren't you saying contact them, but we're not going to let you contact them? No, Judge Malloy, what I would say is that I think the standard here is that Ms. Oman could work through, she'd need to work through, just like if she were an attorney, let's assume that you were an attorney, she'd have to work through the defense attorney in order to talk to the employee witnesses. I don't think there's any reason why a pro se witness or pro se litigant should be given any greater powers in this case, essentially. I mean, she had the opportunity to go through Ms. Bull to contact employee witnesses. Ms. Bull just said, look, I, there are so many witnesses that you are trying to work through. I can't properly represent my client if I don't, if I can't be the gatekeeper. And I think that that's, that's a common practice in, in litigation and arbitration and in contested case hearings when somebody's representing an entity, whether it's a corporate defendant or whether it's a public employer. What about the underlying question? What, what, what is it that would give rise to a cause of action here for retaliation? Have you addressed that yet? I mean, you've discussed in the brief, but. In connection with the, in connection with the issues on appeal, I don't, the only thing that did survive were, were Ms. Bull's actions in connection with the due process hearing. I'm not, I guess I'm not understanding Your Honor's question about if there was anything else. Are you asking if there's anything else in connection with the appeal? Well, what, what struck me is that Judge Hubel seemed to credit the idea that there was a private right of action here for monetary damages under IDEA. Am I misreading that? No, Your Honor. That's, that's absolutely correct. Now, my next point was that the IDEA does not allow nominal damages. And Judge Hubel found that the IDEA. Nominal or any damages? Nominal, no damages whatsoever. Oh. Judge Hubel agreed that the IDEA does not allow compensatory damages, but he treated nominal damages as something different than compensatory damages. I would submit that that's inconsistent with this court's decision in Blanchard, which noted that the IDEA is a comprehensive statutory scheme that creates specific remedies and does not allow remedies other than those that are set forth in the statute. Nominal damages, nominal damages is not one of those remedies. Now, Counselor, that same remedy is under the ADA and the Rehab Act, right? Your Honor, I think that that is correct, and that's getting to the issues on the cross-appeal, but I believe there is a difference of opinion in between some of the circuits on that issue as to whether an IDEA plaintiff can assert claims under the ADA or Section 504 of the Rehab Act. Well, I think our focus would be on the Ninth Circuit. What has the Mark H. comes very close to saying, to recognizing such a right. It does recognize that a plaintiff can assert, who asserts claims under the IDEA, can also assert claims under the ADA or Section 504 of the Rehabilitation Act. It doesn't directly address the question like the First Circuit did in Diaz-Fonseca, although this is a different situation because the District Court ruled that Ms. Oman could not pursue claims on behalf of her son. That was an error, though. Would you agree that under the Rehab Act and the ADA that Mark H. seems to say that a parent can pursue claims on behalf of the child under those? That's not the way I read those cases, Your Honor. I think that she's entitled to, she has standing to pursue claims, but she can't, and this is represent her son. She can pursue claims on her own behalf, and the only claims that survived on her own behalf after summary judgment were the claims that were, I've just been discussing, having to do with alleged retaliatory conduct in connection with the due process hearing. Judge Hubel also awarded nominal damages under Section 1983, Section 1983 under Blanchard. Blanchard makes clear that the IDEA cannot be used to support claims under 1983. Additionally, Ms. Bull's actions are protected by the doctrine of qualified immunity. There's no clearly established case law that would have exposed her to liability for taking positions in a contested case hearing. And finally, the responsible for nominal damages under Section 1983, because there's no evidence, and the trial court did recognize this, that there's no evidence that Ms. Bull's actions were part of a district policy or custom. Counsel, I was just looking at the Mark H case, and it says specifically here that Mark H and Rhea H sued as guardians for violations of the Rehabilitation Act. So why wouldn't that permit the parent to sue under the ADA and the Rehab Act on behalf of the child? Because, Your Honor, they were suing claims on their own behalf as guardians, as, and I will... Well, she was suing as a guardian in this case as well. She was suing as a guardian on her own behalf and on behalf of her son, so she was suing in a dual capacity. Right, so why wouldn't she be able to do that in a dual capacity under the ADA and the Rehab Act, as happened in Mark H? I don't see a distinction. Your Honor, because I believe that there is a distinction between suing... I think Mark H recognized that she could pursue claims on her own behalf. And as guardian of the child. When I... What I'd like to do is reserve my remaining time. I will take a quick look at Mark H and be prepared to respond. Thank you. We'll hear from the other side. Ms. Ullman? Yes, I'm Pat Ullman. I'm the parent of CO. Let me first speak to the issue of whether or not Ms. Bull's discouraging me from contacting witnesses prior to a due process hearing were retaliatory. I understand under the IDEA that a parent may request a due process hearing and part of the rights that a parent has in that process are to call witnesses. And it's just... It would be very difficult to call a witness if you couldn't even contact them. And I was told by Ms. Bull that I could not call witnesses not to speak to me. So I think, I do appreciate the PBS position that they are... That their attorney had a vigorous advocacy position and wanted to ensure that the school was well-represented. However, the prohibition against talking to witnesses covered all the teachers and all the staff of PPS. So in essence, it's sort of saying, well, all the PPS teachers and staff were going to be the school's witnesses and not mine. So I'm, you know, I think it'd be one thing if all the people that were called to testify at the due process hearing were defendants or, you know, somehow... But they're not. They weren't. They were witnesses and I think the purpose of the IDEA due process process is to try and get to the heart of a child's educational program and not to kind of obscure the issue by not allowing a parent to talk to witnesses prior to the due process hearing. It's a difficult situation, but I think once the process got into the adversarial mode, then the formal trappings came into existence. So you were no longer doing the informal resolution process. You were gearing up for an adversarial proceeding. And so the procedure changed a little bit at that point and attorneys generally, when it gets into an adversarial proceeding, the attorneys generally want to be the gatekeepers to make sure that their witnesses are consistent and are informed of, you know, what the issues are and everything before they talk to the opposing party. That's what it appears happened in this case. I think the greater problem you have is that under the IDEA, no damages are allowed. That's the problem. You can only get injunctive relief. So that's the problem I think that you have legally is that you're not entitled to relief. So even if the court agreed with you that there was retaliation, it would have to fashion some kind of injunctive relief as opposed to money damages. So the relief that was granted wasn't really a relief that is afforded under that law. Right. And let me just speak to the gatekeeper issue. I totally understand that an attorney has a gatekeeping function for their witnesses, but this was operating for potentially my witnesses as well. So she was keeping the gate as far as me being able to talk to witnesses. So, and as for the Section 1983 issue, I can't argue that. The Ninth Circuit and Blanchard ruled that 1983 is not an avenue for relief. So I, you know, I don't see any hope in trying to persuade you otherwise. What is the status of your son now in terms of schooling? Has he graduated? He has graduated. He is no longer IDEA. There's, he's not covered by the IDEA. Oh, right. He's aged out. Yes, I'm afraid so. Anything further? I have a number of... You had a cross appeal on the ADA and the Rehab Act. Did you want to speak with us about those? Not necessarily. I just would urge that the, I think Section 504, the Mark H case, and the, there was a case of a teacher, or excuse me, Blanchard II, Blanchard II, which noted that a parent was a proper plaintiff under Section 504. I agree with you on that. And, but the difficulty I have with your claim is this was predicated on him not being admitted to a particular program in the school? Is that, was that what your rehab and ADA claim was based on? That was the, that was one of the claims in the first complaint I filed. Okay, so is that resolved as far as you're concerned? Oh, no. Do you still, hey, can we talk about that? What was the program that you thought he should have been admitted to that he was not admitted to? It was a magnet program, vocational magnet educational program, and he, in order to get into those magnet programs at the time, all students had to have good grades and provide a well-written essay. So that... But he wasn't able to meet those requirements, right? Could not meet those requirements because of his disability. So that was the issue that I raised as far as Section 504 and ADA in the first complaint. Now, the second complaint, and subsequently, I'm trying to raise 504 and Section, or Section 504 and ADA issues that relate to me and to him, and specifically whether or not his rights under 504 and ADA were violated in... In what respect? Well, for example, I mean, there's several I could go into, but the Section 504 also allows for the requesting of a due process hearing, and that, you know, when I requested a due process hearing, it was denied because the rules and regulations... The state denied me that opportunity to go into a due process hearing because I said I hadn't complied with the provisions of the reauthorized IDEA. But those provisions were not yet in effect. So essentially, under both IDEA and Section 504, I had the right to a due process hearing. But didn't you have a due process hearing? No. Not on... No. Not on the... Well, but now that your son's graduated, aren't those pretty much moot at this point? Because there's no relief they could really give you under the Rehab Act or the ADA at this point, could they? I would disagree. I guess I would argue that you can get compensatory damages under Section 504 and the ADA. What would be... What would you be compensated for? Oh, emotional distress. And I did also spend some money to try, in tutoring, to get my son some help, and I... I thought the money that you spent was for independent educational evaluation. That too. That was that. That also. Yeah, but there are no damages available under that because that's part of the damages for failure to reimburse an IE because it was reimbursed. It was reimbursed. It was reimbursed. It was just delayed. There was a delay of about a year in getting reimbursement. So... So maybe, yeah, maybe we could hear from the state in terms of... I'm not clear on the ADA and Rehab Act claims, I'll confess. I'm not sure what we still exist in terms of your due process rights that you say were not recognized under the ADA and the Rehab Act because you didn't comply with some procedures that were not in effect at the time you requested the hearing. Right. That's your argument? Well, that's just one piece there. Well, we have to know everything that you're asking for at this point, otherwise we can't resolve it. Right. I... We're going by what you had in your brief. Okay. We will hear from the school district and from the state, but you still have close to six minutes left in your time, so if you'd like to discuss any other issues, you may do so. Well, I'll just be brief and if I have any time left, maybe I could come back. Well, I'm afraid you can't the way this works. Oh, okay. This is your time, so... This is it. All right. Well, let me speak to the issue of whether or not the issue of qualified immunity. I'll just say that I think it's clear that Ninth Circuit precedent is that this issue should be appealed early on in the process, or rather I should say Supreme Court precedent. Should be... early on in the process, and in this case, defendant PBS did not appeal the denial of qualified immunity. And, you know, I think the PBS brief makes the point that their... the point that their IDEA does not prohibit retaliation and that's correct. The IDEA does not prohibit retaliation against a parent or a child. However, I think the access to administrative appeals process is the issue here and that's something that has an established... that's an established right under Ninth Circuit precedent, specifically Serrano-Gasco and the CARE Partners LLC decision 2008. I'd like to cover the Oregon Department of Education's reliance on... good faith reliance on legal counsel defense, which was raised and which Judge Hubel agreed was a legitimate defense to any... any violations of the IDEA and essentially ruling that the state had... the state... one of the defendants had relied in good faith on advice from the production of the administrative record that had been requested. That good faith reliance on legal counsel defense is not raised in any of the responsive answers that the state was required to file. I, you know, I had asked the district court to sanction the state for not filing a responsive answer and Judge Hubel denied that motion. So here's my... my point is this. There are a couple of rulings that make the point that if you don't raise a defense in response of pleading, you've waived that defense and specifically the most recent one that I think is, you know, speaks directly to an issue like that is Diaz v. Jaguar, which is an 11th Circuit case issued in late 2010 in which a... the 11th Circuit Court of Appeals... back up... the district court in that case allowed the defendant to amend their reply to conform with the... you know, there was a sort of a... there was an implied consent to have that particular issue be dispositive of the case. It came out during trial testimony and the... the judge... the district court judge allowed the defendants to amend their answer. The 11th Circuit said no, that was wrong. That they... you can't... that it was wrong to allow the defendant in that case to amend their answer. Here, in my case, we're not talking about the state's amending its answer. The state never did amend their answer. They didn't include the defense... the good faith reliance on legal counsel defense in any of their responsive pleadings. And so, I think, I guess this gets to the heart of whether or not the rules... the federal rules of civil procedure are rules or merely guidelines. And I think that particularly if, you know, you're a pro se plaintiff and you have no expertise in this area, that it's... it's important that the... that a full and complete answer be filed once a plaintiff goes forward with a complaint. So... and I'm out of time, so I will... Well, I have to say that you've represented yourself well throughout these proceedings. You've done a really good job. Thank you, Your Honor. And I would agree. Before you leave, Ms. Ullman, you referred to the Diaz case. I looked through your brief and I didn't find it. Is it... was it referred... is this a newly issued case? It is... right. It was very late in 2010 and I didn't have that. Before you leave the courtroom, if you would give Ms. Brebner a reference to that case, in other words, the name of the case and the citation, you need to make three copies for us, one copy for your opposing counsel, and if you could do that before you leave, I'd appreciate it. You can just write it on the legal pad. In fact, there's a form that she has right there. You can use that form. Just write that on that form. No, no, no, no, no. Just fill out that form when you get back to your table. That'll be fine. You can do it at your table. Thank you. We'll hear from, I guess, the State. May it please the Court, Inge Wells from the Oregon Department of Justice on behalf of the Department of Education. I don't have a whole lot of time and so I wanted to try to respond directly to a couple of Judge Rawlinson's questions relating to the Section 504 claim. At least with regard to the State defendants, what is left in this litigation is a claim. It's actually the 16th claim for relief in the complaint in the second case. And what that claim alleges is essentially that the Oregon Department of Education had retaliated against plaintiff individually by making it difficult for her to pursue her due process rights under the IDEA. And in the prayer for relief relating to that claim, there are requests for various types of injunctive relief but no request for any sort of compensatory damages. I thought she said she wanted pain and suffering, emotional distress. None of that was ever sought in the complaint? Not with regard to that particular claim for relief, no. Okay. So was there another claim for relief that asserted that she was denied her due process rights under the ADA and the Rehab Act to receive a due process hearing? She specifically mentioned the fact that she was required to comply with regulations that were not yet in effect. She did also make that claim. I believe that that claim was couched as a 1983 claim and more of a retaliation type claim. But is it your view that all of these really fall under the umbrella of the IDEA regardless of how they've been denominated? That's correct. I think that the holding in Mark H. and then also I think in subsequent cases that this court has decided has recognized that a plaintiff can allege claims under the IDEA as well as claims under other, whether it be 504 or the ADA, if there's a separate cause of action for that claim. In this case, the 504 and ADA claims are all essentially claims based on the IDEA. And so in our view, Mark H. is distinguishable in that regard. In other words, Mark H. is limited just to 504 and ADA. Is that right? Well, what the court said in Mark H. was that a parent acting as guardian ad litem for a child could pursue a claim under the IDEA and Section 504 if there was an independent cause of action under 504 that wasn't grounded in the IDEA. But in this case, the independent cause of action was the fact that he was not allowed to enter the magnet school because of his disability. That would be separate and apart from the IDEA. I think that that was the original claim that was in the first complaint. That claim was dismissed because of the court's ruling that Ms. Oman could not act as an attorney for her child in that claim. That was wrong. Under Mark H., she could represent him as guardian ad litem per se. I don't believe that that's what the holding in Mark H. I don't think that's what the procedural posture of the case was in Mark H. Certainly, any parent can and needs to act as a guardian ad litem for their child if the parent as guardian ad litem was represented by counsel and was not proceeding per se. But so what? If a person can proceed as guardian ad litem with an attorney, why couldn't they proceed as guardian ad litem per se? What would preclude that? I think what precludes that is this court's holding in Jones that because of sort of the importance of a child's interest being properly represented in a proceeding that the child should be represented by counsel even if that representation is by way of a guardian ad litem. This parent has proceeded per se all the way to the Ninth Circuit Court of Appeals. Yes, she has. And so I'm not sure that that argument carries a lot of weight. I think the Ninth Circuit has recognized the ability. If she can proceed as guardian ad litem, we've recognized the ability of litigants to proceed per se in almost every instance that they've sought to do so. I'm not sure I agree with that. But assuming I disagree with you and that she could proceed as guardian ad litem per se, is there a separate cause of action under the ADA and 504 for her claim that he was discriminated against in the admission to the magnet school due to his disability? I'm over time. May I respond to the question? Of course. In the state's view, there is not a separate claim because of the fact that the plaintiff's request for an IEP and part of the procedures that she was going through with the district in order to develop that IEP for her child. So in our view, there is not a separate cause of action there. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Molloy, O'scannlain, Rawlinson